FILED

2014 JUL 11  PM 2: 50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  JOHN E. TIEDT (SBN 134667)
   jtiedt@tiedtlaw.com
2  MARC S. HURD (SBN 130667)
   mhurd@tiedtlaw.com
3  **TIEDT & HURD**
   980 Montecito Drive, Suite 209
4  Corona, California  92879
   Telephone: (951) 549-9400
5  Facsimile: (951) 549-9800

6  Attorneys for Plaintiff, W4, LLC, a Delaware Limited Liability Company,
7  registered to do business in California as W4 MEDIA, LLC

8            **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10               CV14-05407 - MMM (JEMx)

11  W4, LLC, a Delaware Limited Liability ) CASE NO.
    Company, registered to do business in )
12  California as W4 MEDIA, LLC,          ) **COMPLAINT FOR DAMAGES**
                                          ) **FOR:**
13                                        )
                         Plaintiff,       )
14                                        ) **1.  BREACH OF WRITTEN**
                                          )     **PERSONAL GUARANTY**
15  vs.                                   )
                                          )
16  ALEX SCOVELL, a Foreign National      )
    and DOES 1 through 10, Inclusive,     )
17                                        )
                         Defendants.      )
18                                        )
                                          )
19  _____ )

20

21       Comes now, Plaintiff, W4, LLC, a Delaware Limited Liability Company,

22  registered to do business in California as W4 MEDIA, LLC (hereinafter "W4")

23  which complains and alleges the following:

24                 **PRELIMINARY STATEMENT**

25       1.    This is an action for damages arising from an alleged breach of contract

26  wherein W4 alleges that the defendant, as guarantor for the obligations under the

27  contract, is liable to Plaintiff for damages arising out of that alleged breach.

28  ///

COPY

**GENERAL ALLEGATIONS**

2.     Plaintiff, W4, LLC, (hereinafter "Plaintiff" or "W4"), is a Delaware Limited Liability Company, registered to do business in California as "W4 MEDIA, LLC," whose principal place of business located at 2644 30th St, Suite 100, Santa Monica CA, 90405, and whose current address listed with the California Secretary of State as 40 19th Avenue, Unit A, Venice, California 90291.

3.     Plaintiff is in the business of providing internet advertising services for clients, for prearranged fees.

4.     Plaintiff is informed and believes and on that basis alleges that Defendant, ALEX SCOVELL ("SCOVELL"), is a Foreign National, a citizen of, and domiciled in, the United Kingdom, and whose address is believed to be 7 Tyne Close, Worthing, BN13 3NG, United Kingdom.

5.     Plaintiff is informed and believes and on that basis alleges that Defendant, SCOVELL, is, and all times herein mentioned was, a Director of, and a principal in, the entity known as "Pixel By Pixel Limited."

6.     At all times herein mentioned, said defendants, and DOES 1 through 10, inclusive, and each and every DOE in between, were and now are individuals, corporations, partnerships, sole proprietorships, joint ventures or associations duly licensed and/or organized and existing under and by virtue of the laws of the State of California and are affiliated with the other Defendants named herein, and bear liability for the acts complained of in this complaint in the same fashion as those Defendants.

7.     Plaintiff is informed and believes, and thereon alleges, that each of the defendants sued herein as DOES are responsible in some actionable manner for the events and happenings herein alleged, and thereby legally causing the injuries and damages to the plaintiffs as hereinafter set forth.

8.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such

fictitious names.  Plaintiff will amend the complaint to allege the true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that it is an action between citizens of a State and citizens or subjects of a foreign state.

10.     All agreements described herein below in this Complaint were entered into, accepted and were to be performed by Plaintiff in Santa Monica, Los Angeles County, in the State of California.  Thus, venue is proper in this Court, under 28 U.S.C. § 1391(b)(2), in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. [28 U.S.C. § 1391(b)(2); Jenkins Brick Co. v. Bremer, 321 F3d 1366, 1372 (11th Cir. 2003); First of Mich. Corp. v. Bramlet, 141 F3d 260, 264 (6th Cir. 1998); TruServ Corp. v. Neff, 6 F.Supp.2d 790, 792 (ND IL 1998) (personal guarantees signed in one state for payment in another).]

## BACKGROUND FACTS AND ALLEGATIONS

11.     The instant action arises out of a dispute related to services provided by W4 pursuant to an agreement between W4 and Pixel By Pixel Limited ("PIXEL") as more fully set forth in a standard Advertising Insertion Order ("IO"), and the "Terms and Conditions" set forth therein, for ad campaigns entitled as follows: (1) "BBR Financial-UK Car Loan-Email only;" (2) "Quote Me Quick-UK Life Insurance-Email Only;" and (3) Quote Me Quick-UK Private Medical Insurance-Email Only." A true and correct copy of the agreement between PIXEL and W4 (the IO) is attached as Exhibit "A" and incorporated herein by this reference.)  That IO provided that W4 would provide its advertising services to PIXEL on a "CPA" (cost per action) basis at various CPA rates, ranging from £25 per action to £33 per action.

12. In addition, when PIXEL sought to retain the services of W4, in order for W4 to establish an "open account" for PIXEL, PIXEL applied for a "line of credit" with W4, and submitted a "Credit Application" to permit W4 to extend a line of credit to Pixel. (A true and correct copy of the Credit Application is also attached as Exhibit "B" and incorporated herein by this reference.) (Plaintiff submits this Credit Application is such form, with any tax identification number and/or any bank account information redacted so as to protect the privacy of PIXEL, in the filing of this public Complaint.)

13. Under the terms of the Agreement between W4 and PIXEL [Exhibit "A"], payment on all submitted invoices were due to W4 from PIXEL on a "net 5" basis, meaning within 5 days of the end of the billing month following submission of the invoice.

14. Pursuant to the Agreement between W4 and PIXEL [Exhibit "A"], W4 agreed to provide internet marketing services to, or for the benefit of, PIXEL, and did, in fact, generate compensable activity for PIXEL. In fact, PIXEL was invoiced for activity in October 2013 and November 2013 (per Invoices numbers 14640 and 15091), and PIXEL paid for these services via wire transfer.

15. However, since the last wire transfer credited to PIXEL's open account on January 17, 2014, PIXEL has failed to pay for W4's services. More specifically, pursuant to Invoice # 15538, dated December 31, 2013, PIXEL became indebted to W4 in the sum of £1,756.00, and per Invoice # 16010, dated January 31, 2014, PIXEL became indebted to W4 in the sum of £153.00.

16. Under the terms of the Agreement between W4 and PIXEL [Exhibit "A"], PIXEL agreed that all payments not made on the amounts invoiced shall accrue interest at the rate of 1.5% per month, or the highest rate allowable by law. Accordingly, when Invoice number # 16325 went unpaid, W4 issued Invoice # FC-394, reflecting the finance charges of £24.25, or then approximately $38.76 (U.S.) imposed for PIXEL's failure to timely pay the amounts owed.

LAW OFFICES
TIEDT & HURD

17.     All totaled, between Invoice numbers 15538 and 16010, and the finance charges reflected in FC394, the total amount owed by Pixel to W4 is now **£1,933.25** or by W4's calculations **$3,182.96** U.S. Dollars, and this amount is now overdue. True and correct copies of these invoices are attached as Exhibit "C" and incorporated herein by this reference.

18.     Plaintiff alleges that there is no dispute that the amounts owed by PIXEL to W4 referenced above are, indeed, due and owing.  Based on recent email communication between W4 and PIXEL, wherein PIXEL's balance owed to W4 was addressed, PIXEL never disputed the amount owed.  Rather, Ms. Read of PIXEL acknowledged the debt, promised to "push for payment ASAP," and apparently accounted for the delay in payment citing "finance" issues.  Thus, W4 alleges that PIXEL does not have any credible defense for its non-payment of the debt. (A copy of the "email chain" is attached as Exhibit "D" and incorporated herein by this reference.)

19.     In addition, as noted above, in September 2013 when PIXEL initially applied for credit with W4, Defendant SCOVELL returned the Personal Guarantee in conjunction with a credit application submitted by PIXEL.  [See Exhibit "B."] Under the terms of that Personal Guarantee ("PG"), Defendant SCOVELL agreed "to pay any and all indebtedness of any nature whatsoever incurred by" PIXEL.  This PG further provided that the PG was and is "<u>continuing, unconditional and irrevocable</u>."  This PG further expressly provides that the Guarantor (SCOVELL) agreed to be "jointly and severally" liable, and that the obligation of the Guarantor is "separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefore shall arise." Thus, under the terms of the PG, should Pixel be found to be in default on its payments, or be otherwise unable to pay its obligations under the contract with W4, Defendant SCOVELL is <u>personally liable</u> for that outstanding debt.

///

20.    Via letter dated April 22, 2014, W4, through its counsel, demanded payment of the overdue balance from PIXEL. (A true and correct copy of this April 22, 2014 demand letter is attached as Exhibit "E" and incorporated herein by this reference.)

21.    On May 6, 2014, in an apparent response to the April 22, 2014 demand letter (Exhibit "E"), Defendant SCOVELL forwarded an email advising as follows:

> "I regret to inform you that that Pixel by Pixel Ltd has gone into Administration.  Unfortunately we suffered a sizeable bad debt from one of our clients which proved irrecoverable. As such, I am no longer in control of the company which is the hands of administrators."

22.    A true and correct copy of this May 6, 2014 email is attached as Exhibit "F" and incorporated herein by this reference.

23.    Plaintiff is informed and believes and on that basis alleges that "administration" in the legal parlance of the United Kingdom is similar in form to "Chapter 7" or "Chapter 11" type bankruptcy proceedings in the United States, such that "administration" allows for the reorganization of the company's affairs or the realization of its assets for the benefit of creditors. When a company goes into administration, an insolvency practitioner takes over the control of the company's affairs from its directors.

24.    Notwithstanding PIXEL's placement into "administration," under the terms of the PG which provides that SCOVELL is "jointly and severally" liable, and that the obligation of the Guarantor (SCOVELL) is "separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefore shall arise," Plaintiff alleges and asserts that regardless of PIXEL's ability or inability to pay its debts, W4 has legal right to seek recovery from SCOVELL directly for PIXEL's outstanding debts.

///

25.    By letter dated May 8, 2014, following SCOVELL's May 6, 2014 email [Exhibit "E"], counsel for W4 sent a further demand letter directly to SCOVELL, sending the letter via overnight mail and email.  (A true and correct copy of the demand letter to SCOVELL, dated May 8, 2014, is attached as Exhibit "G" and incorporated herein by this reference.)  In this letter, SCOVELL was expressly advised/noted that PIXEL's Credit Application "… included a 'Personal Guarantee' that was completed/executed by you and returned to W4, reflecting that you agreed to <u>personally guarantee Pixel's debts</u>. (See page 4 of Exhibit "B" to the April 22, 2014 letter.)"

26.    By email correspondence dated May 19, 2014 to SCOVELL, W4, through counsel, again contacted SCOVELL requesting that he honor his personal guarantee of PIXEL's debts.  In response to this email on May 20, 2014, SCOVELL inquired as to whether W4 had pursued collection through PIXEL's administrator, and then denied his obligation to pay for PIXEL's debts.  (A true and correct copy of this May 19-20, 2014 email "chain" is attached hereto as Exhibit "H" and incorporated herein by reference.)  In his reply, SCOVELL expressly provided:

> Have you spoken to the administrators to find out how much you will be paid.  I would suggest this should be your first port of call – your debt is with Pixel by Pixel Ltd and **until they fail to pay I won't be considering any personal guarantees**. (Emphasis added)

27.    In an email dated May 20, 2014, in reply to SCOVELL's May 20, 2014 email reply, counsel for W4 again advised as follows:

> I don't believe that your position that W4 is obligated to "wait and see" if Pixel fails to pay has merit.  Our position is that W4 cannot be forced to wait on the results of the "administration" process with Pixel.  For your reference, a copy of the credit application, with the attendant personal guarantee ("PG") is attached.  Please note that this PG provides that the obligor agreed to be "jointly and severally" liable, and that the obligation is "separate and cumulative and may be pursued separately, successively or concurrently, as occasion

therefore shall arise." Thus, regardless of Pixel's ability or inability to pay its debts, W4 has legal right to seek recovery from you directly for Pixel's debts.  If you then feel that Pixel owes you for Pixel's obligations, then you have recourse against Pixel within the confines and limitations of the "administration" process to seek recovery from Pixel and/or the assigned administrator.

28.    On May 20, 2014, SCOVELL responded to the above referenced email advising that he would "come back to you on this shortly."

29.    A true and correct copy of this May 20, 2014 email chain between SCOVELL and W4's counsel is attached hereto as Exhibit "I" and incorporated herein by reference.

30.    Neither W4, nor its counsel, has received any further communication from SCOVELL regarding this debt.

## FIRST CAUSE OF ACTION

## FOR BREACH OF WRITTEN GUARANTEE

31.    Plaintiff hereby incorporates Paragraphs 1 through 30 as though fully set forth herein.

32.    Pursuant to a written agreement between the W4 and PIXEL, dated April 24, 2013, and later signed by the parties on or about May 10, 2013 and May 13, 2013, Plaintiff and PIXEL entered into an "Advertising Insertion" Agreement (hereinafter the "Agreement"), through an "Advertising Insertion Order," and the "Terms and Conditions" set forth therein, for ad campaigns entitled as follows: (1) "BBR Financial-UK Car Loan-Email only;" (2) "Quote Me Quick-UK Life Insurance-Email Only;" and (3) Quote Me Quick-UK Private Medical Insurance-Email Only."

33.    In addition, when PIXEL sought to retain the services of W4, in order for W4 to establish an "open account" for PIXEL, PIXEL applied for a "line of credit" with W4, and submitted a "Credit Application" to permit W4 to extend a line of credit to Pixel.  (A true and correct copy of the Credit Application is also attached

as Exhibit "B" and incorporated herein by this reference.) (Plaintiff submits this Credit Application is such form, with any tax identification number and/or any bank account information redacted so as to protect the privacy of PIXEL, in the filing of this public Complaint.)

34. In addition to the Credit Application described in paragraphs 19 and 33 above, and in conjunction with the written Agreement (Exhibit "A" described above), on or about September 16, 2013, Defendant, SCOVELL, executed a "Personal Guarantee." A copy of this Personal Guarantee is attached as part of Exhibit "C." (Plaintiff submits this Personal Guarantee in redacted form, with the Tax identification number information redacted so as to protect Defendant, AVALINA WILLIAMS's privacy in the filing of this public Complaint.)

35. The purpose of the Personal Guarantee referenced above was to induce Plaintiff to extend credit to PIXEL.

36. By the Personal Guarantee (Exhibit "C"), Defendant, SCOVELL, agreed to pay any and all indebtedness of any nature incurred by PIXEL and to repay and indemnify such indebtedness. More specifically, by the Personal Guarantee (Exhibit "C"), Defendant, SCOVELL, individually guaranteed all present and future obligations of PIXEL BY PIXEL LIMITED., including all indebtedness and liability to Plaintiff of every nature then owing or thereafter to be incurred by Defendant, PIXEL. The Guarantee specifically identified W4 as the "Obligee" and provides that the Guarantor (SCOVELL) "does hereby guarantee and agree to pay any and all indebtedness of any nature whatsoever incurred by" PIXEL. The guarantee further provides that the Guarantee "shall be a continuing, unconditional, and irrevocable guarantee to repay and indemnify such indebtedness of Company."

37. Further, the Guarantee (Exhibit "C") provides that the "Guarantor hereby agrees that all rights, remedies, and recourses afforded to Obligee by reason of this Guarantee or otherwise are separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefore shall arise, and are

non-exclusive and shall in no way limit or prejudice any other legal or equitable right, remedy, or recourse which Obligee may have.

38.    The guarantee further provides that, if any action is brought to enforce the guarantee, Defendant "agrees to pay all costs, interest, and reasonable attorney's fees incurred by [W4] in collecting any amounts hereby guaranteed, whether from [PIXEL] or Guarantor." (See Exhibit "C.')

39.    Plaintiff acted in reliance on the guarantee and, as reference hereinabove, PIXEL is now indebted to Plaintiff in the sum of **£1,933.25 ($3,182.96).**

40.    No part of this sum has been paid by PIXEL and due to the recent placement of PIXEL into "administration" under UK law, W4 has no reasonable expectation that such sum will ever be paid by PIXEL.  Further, despite repeated requests by W4 to Defendant, SCOVELL, to honor his commitment under the personal guarantee, SCOVELL has not paid any of the sum due under the guarantee despite Plaintiff's demand.   Plaintiff has now been obligated to institute and prosecute this action to enforce the guarantee.

41.    Further, the obligation to pay under the Personal Guarantee is "joint and several," and that the obligation of the Guarantor (SCOVELL) is "separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefore shall arise." Thus, under the terms of the PG, since PIXEL is in default on its payments, or otherwise unable to pay its obligations under the contract with W4, Defendant SCOVELL is <u>personally liable</u> for that outstanding debt.

42.    As a result of the breach of the written personal guarantee, there is now due, owing, and unpaid from Defendant, SCOVELL, the principal sum of **£1,933.25 ($3,182.96)**, plus interest on that sum.

43.    As a result of Defendant, SCOVELL's breach of the written guarantee, Plaintiff has been damaged in the sum of **£1,933.25 ($3,182.96)**, together with costs, interest and attorney fees incurred in collecting this amount.

## PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

**For the First Cause of Action** :

1.    For judgment against Defendant, SCOVELL in the principal sum of **£1,933.25 ($3,182.96)**;

2.    Late charges established according to proof at the time of trial;

3.    Interest according to proof at the time of trial;

4.    Reasonable attorney's fees as established according to proof at the time of trial;

5.    Costs of suit herein incurred; and

6.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted.

Dated:  July 8, 2014        **TIEDT & HURD**

By:_____

JOHN E. TIEDT
MARC S. HURD
Attorneys for Plaintiff, W4, LLC, a
Delaware Limited Liability Company,
registered to do business in California as
W4 MEDIA, LLC

# EXHIBIT "A"

**EXHIBIT "A"**

# W4

ADVERTISING INSERTION ORDER

| Acct. Exec. | Miles Sullivan | Date: | 9-25-13 |

W4 LLC, 2415 MAIN STREET UNIT A, SANTA MONICA, CA 90405 (888) 838-1572

| | | | |
|---|---|---|---|
| Advertiser Name: | Pixel By Pixel Limited | Campaign Name: | 1. BBR Financial – UK Car Loan – Email Only<br>2. Quote Me Quick – UK Life Insurance – Email Only<br>3. Quote Me Quick – UK Private Medical Insurance – Email Only |
| Billing Address: | 9 Liverpool Terrace | CPA Rate: | 1  £25<br>2.  £33<br>3  £30 |
| City, State, Zip: | Worthing, W-SSX BN11 ITA | Payable Action: | 1" page submit on all |
| Contact: | Alex Scovell | Payment Terms: *As described in Terms and Conditions* | Net 15 from End of Billing Month |
| Phone: | 02033973798 | Billing Contact: | Chris Painter |
| Fax: | | Phone: | 01903244274 |
| Email: | alex@pixelbypixel.co.uk | Email: | chris@pixelbypixel.co.uk |
| IM: | | IM: | |

CAMPAIGN DETAILS

| | |
|---|---|
| Exclusive: | ☐True ☐Network ☒NO | Suppression File Retrieval: ☐Download via login ☒Emailed |
| Channels: | ☒Email/Newsletter ☐Display ☐Text/In-Text ☐PPV/Contextual ☐Search/SEM/SEO ☐Social Media ☒Network Syndication ☐Mobile/in App ☐Mobile/Push ☐Incentive - Soft ☐Incentive - Cash |
| Regions: | ☐US Only ☐Canada ☒UK ☐Other Countries (please list): |
| Budget Cap? | ☐Daily ☐Weekly ☐Monthly Dollar Amount: Uncapped |
| Lead Cap? | ☐Daily ☐Weekly ☐Monthly Number of Leads: Uncapped |
| Start Date: | ASAP | End Date (if applicable): |
| Special Instructions: | QMQ Life & QMQ PMI - sends Monday to Thursday only. Residuals will be paid for |

THIS INSERTION ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED HEREWITH IN PAGES 2-4. THIS DOCUMENT SUPERSEDES ANY PREVIOUSLY AGREED TERMS AND/OR CONDITIONS.

THE SIGNATORY OF THIS INSERTION ORDER REPRESENTS THAT HE/SHE HAS READ, UNDERSTANDS, AND AGREES TO THE TERMS OF SUCH TERMS AND CONDITIONS, AND IS THE DULY AUTHORIZED AGENT OF ADVERTISER.

| Advertiser Signature: | ARead | W4 Signature: | |
|---|---|---|---|
| Print: | AMY READ | Print: | Jay Klim |
| Title: | ACCOUNT MANAGER | Title: | Head of Sale |
| Date: | 26/09/2013 | Date: | 9/26/13 |

Page 1 of 5

IF ADVERTISER IS AN AGENCY, AGENCY'S CLIENT MUST SIGN BELOW AUTHORIZING AGENCY TO ENTER INTO THIS
ADVERTISING AGREEMENT ON ITS BEHALF, AND GUARANTEEING PAYMENT OF AGENCY'S OBLIGATIONS HEREUNDER:

| Client (entity): | PIXEL BY PIXEL LTD | Name: | AMY REID |
| Signed: | Amma | Date: | 26/09/2013 |

## TERMS AND CONDITIONS TO W4 ADVERTISING INSERTION ORDER

This insertion order, between W4 LLC (W4) and Advertiser, sets forth the rights and obligations of each party with respect to the advertising campaign described earlier in this document. Advertiser understands that the sole obligation of W4 is to execute the referenced advertising campaign as described in this insertion order

1. PAYMENT. Advertiser agrees to pay W4 for all advertising published by W4, its assigns and/or affiliates, on a CPA basis (Cost Per Action, Cost Per Acquisition or Cost Per Application) in accordance with the terms of this document. All such actions, acquisitions, applications and/or other form of payable events herewith shall be referred to as "Actions". Unless otherwise stated, W4 will invoice advertiser at the end of each month for such Actions as generated by W4 for the corresponding month. Unless otherwise stated, Advertiser shall send payment for each monthly invoice to W4 within five (5) days of the end of billing month. W4 will set a monthly credit limit for Advertiser. Should the credit limit be reached prior to the end of the monthly billing cycle, W4 will pause campaign(s) and require immediate payment or reassessment of credit limit prior to re-launch and/or change net terms of frequency of invoicing (Advertiser also agrees to pay any wire fees that Advertiser's banks whether account holding or intermediary, deduct as a result of sending payment). Advertiser will be responsible for paying the full amount invoiced, regardless of any minimum payment thresholds put forth by Advertiser, whether by policy or publisher account signup, unless otherwise agreed to by both parties outside of Terms and Conditions contained within or required by Advertiser to obtain a publisher account. All payments not made within the (7) days of the due date shall accrue interest at the rate of 1.5% per month, or the highest rate allowable by law, whichever is greater. Advertiser agrees that it shall be solely liable for payment to W4. Further, Advertiser represents and warrants that it will furnish payment on all invoices, notwithstanding any non-payment to Advertiser by any third party including, without limitation, Advertiser's clients. W4's failure to invoice Advertiser shall not constitute the waiver of any amounts due to W4 by Advertiser and/or W4's breach of this insertion order. Should Advertiser and/or Client default in the payment of any invoice, W4 shall have the right to shorten payment terms to Due Upon Receipt and/or require payment in advance for continued services, at the sole discretion of W4 and without notice required. Advertiser agrees to pay all costs incurred by W4 including, but not limited to, collection agency and attorneys' fees and costs, as a result of having to enforce the terms of this insertion order. If Advertiser is unable to provide conversion information, and/or W4's tracking system fails to report Actions or reports less Actions than the actual amount, then Advertiser agrees to pay W4 based on an estimate to be negotiated in good faith by the parties based on the data available to both parties

2. REPORTING. Reporting will be based on the number of Actions as shown by W4's own tracking methods, typically a pixel placed on Advertiser's site. Advertiser agrees to provide W4 with final number of valid actions for each month by the 7th of the following month or will be billed an additional 5% on top of W4's reported number. Advertiser acknowledges that W4's tracking of Actions may be subject at times to either under or over reporting, and agrees to release its own transaction logs and other tracking records, if requested, to W4 in the event of a discrepancy. Advertiser agrees to pay W4 for all actions legitimately caused by campaign placements made by W4 or its affiliates whether tracked by W4 or not. Conversely, should Advertiser find instances of W4 over-reporting of Actions (showing more Actions than Advertiser's own tracking), Advertiser agrees to notify W4 within 48 hours of occurrence of the actual number of Actions completed. In such case, W4 agrees to provide detailed information on each over-reported Action if such information exists, and Advertiser agrees to pay for any Actions that contain sufficient information to qualify said Action as legitimate. In the event that Advertiser and W4 encounter under or over reporting, both parties agree to work diligently to resolve such discrepancies, and also agree to work together to address any technical issues so as to eliminate discrepancies in the future

    A.   FOR ALL LEAD GENERATION CAMPAIGNS. A "valid" lead is defined as any Action generated that fires W4's tracking pixel on the confirmation page and does not contain fraudulent information. Any Actions determined to be "invalid" that do contain obviously fraudulent information may be returned to W4 within five (5) business days from month end. The following information must be included for all "invalid" returned Actions: transactional identification number, publisher identification number, date/time stamp, incoming IP address and reason for rejection. Should the Advertiser fail to provide this information within the time frame allotted, then all potential disputes will be considered waived and the final numbers will be considered final and billable

    B.   FOR ALL CAMPAIGNS REQUIRING A CREDIT CARD TRANSACTION. A "valid" lead is defined as any Action generated that fires W4's tracking pixel on the confirmation page. Any Actions determined to be "invalid" that do contain obviously fraudulent information may be returned to W4 within five (5) business days from month end. The following information must be included for all "invalid" returned Actions: transactional identification number, publisher identification number, date/time stamp, incoming IP address and reason for rejection. Should the Advertiser fail to provide this information within the time frame allotted, then all potential disputes will be considered waived and the final numbers will be considered final and billable

3. ADVERTISER REPRESENTATIONS. Advertiser represents and warrants that it holds required intellectual property rights and/or licenses to permit the use of advertising materials by W4 and W4's publishers. Advertiser warrants that its materials so provided to W4 do not infringe on any third party's copyright, patent, trademark, trade secret or other proprietary rights, do not violate any law, statute, ordinance or regulation regarding the creation and marketing of online materials including, without limitation, those governing false and/or deceptive advertising, and are not defamatory or trade libelous in any way

4. ASSIGNMENT. Advertiser will not assign this insertion order without W4's prior written consent. W4 may assign all or a portion of its duties and obligations hereunder to any affiliate, successor and/or other third party. Subject to the foregoing, the terms of this insertion order

will be fully binding upon, inure to the benefit of and be enforceable by the parties' respective successors, heirs, executors, administrators and permitted assigns.

5  CREATIVE CONTROL   Advertiser will be solely responsible for creating, managing, editing, reviewing, canceling and otherwise controlling the advertising banners, display creatives, text advertisements and other materials issued to W4   Advertiser acknowledges that W4 is acting only as a passive distributor of such content  W4 has no obligation to Advertiser regarding the content of advertisements Advertiser places with W4   W4 undertakes no responsibility to review the content, or any affiliate-generated content, to determine whether any such content may result in liability to third parties

6  DISCLAIMER OF WARRANTIES   Both parties provide all services performed hereunder "AS IS" and hereby expressly disclaim all warranties, expressed or implied, regarding their services or any portion thereof, including any implied warranty of merchantability or fitness for a particular purpose and implied warrant es arising from course of dealing or course of performance  Without limiting the generality of the foregoing, both parties specifically disclaim any warranty regarding  (1) the number of individuals who will see the content, and (2) any benefits that the other party might obta n from the campaign. Neither party guarantees continuous or uninterrupted service to the campaign  Should advertiser's campaign(s) be interrupted, make-goods will be calculated based on the average conversion rate and number of clicks for each publisher during its normal period of operation for the length of time that the interruption(s) last  Advertiser agrees to compensate W4 for this make-good  All numbers and amounts relating to conversions or leads contained in this insertion order are estimates only, and are not at all guaranteed by either party  Due to the nature of the advertising methods  over delivery and under-delivery are typical. In the event that W4 over delivers (i e  Advertiser orders and pays for 200 Actions and W4 delivers to the Advertiser 250 Actions) then Advertiser shall be liable for payment of all overage up to three hundred percent (300%) of the amount ordered and pay such costs on net five (5) terms

7  LIMITATIONS ON LIABILITY   In no event shall either party be liable for any special, direct, indirect, incidental, actual  punitive or consequential damages, or for interrupted communications, lost data, lost revenue or lost profits arising out of, or in connection with, this insertion order  Under no circumstances shall either party be liable to the other party or any third parties for an amount greater than the amounts received from Advertiser pursuant to this insertion order

8  INDEMNITY   Advertiser agrees to indemnify, defend, and hold harmless W4, its parents, successors  subsidiaries, and affiliates, and their respective directors, officers, agents and employees for any claims, liabilities, costs and expenses (including reasonable attorney's fees) made against W4 by a third party or parties or a government agency as a result of  (i) any breach of the terms of this Agreement, including but not limited to the foregoing representations and warranties, (ii) any claim arising from the sale or license of Advertiser's goods or services, (iii) any violation of an applicable law, rule, or regulation by Advertiser, or (iv) any other act, omission or misrepresentation by Advertiser. W4 agrees to indemnify, defend, and hold harmless Advertiser, its parents, successors and subsidiaries, and their respective directors, officers employees (the "Advertiser Indemnified Parties") for any claims, liabilities  costs and expenses ( including reasonable attorney's fees) made against the Advertiser by a third party or parties as a result of acts of gross negligence or willful misconduct by W4  The indemnifying party may participate in the defense of the indemnified party at its own expense

9  CONFIDENTIAL INFORMATION   Neither Advertiser nor W4 shall disclose or use the other party's confidential information for any purpose other than the purposes contemplated by this agreement, unless such disclosure or use is allowed by written permission of the other party However, either party may disclose the other party's confidential information to the extent required by applicable law  but only after five (5) days prior written notification to the other party of such required disclosure  Advertiser's confidential information shall remain the property of Advertiser, and W4's confidential information shall remain the property of W4   The parties shall not  disclose any of the terms and conditions of this document to any third party without the express prior written consent of the other party

10  PRIVACY   Advertiser warrants that engaging in the services provided by W4 pursuant to this insertion order shall not violate Advertiser's privacy policy   All parties represent and warrant that they are fully compliant with applicable privacy laws, and all federal and state regulations  All parties shall also provide notice for, and fully disclose, their respective privacy policies and practices to visitors to their website(s)

11  TERMINATION   Advertiser may terminate this insertion order upon providing ten days written notice to W4   W4 may terminate this insertion order upon providing forty eight (48) business hours notice  In either case, Advertiser shall remain liable for all costs incurred prior to termination

12  E-MAIL SUPPRESSION LISTS   The part es hereby represent and warrant that they shall at all times fully comply with all applicable state and federal statutes, rules and regulations with respect to their respective businesses including, without limitation, CAN-SPAM and all other laws governing deceptive trade practices and/or online marketing and/or advertising   In the event that Advertiser desires distribution of its campaigns via email, Advertiser agrees to provide a regularly updated suppression list to W4 containing current unsubscribe requests in conformance with CAN-SPAM  W4 agrees to include a physical address for Advertiser in the body of every e-mail  Advertiser must provide to W4 its physical mailing address  If Advertiser fails to provide such mailing address, W4 will use the physical mailing address appearing in this insertion order.

13. JURISDICTION   This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of California, without regard to its conflict of laws rules.  If any legal action is required to enforce this contract, such will be filed with a court in or near Los Angeles, California.

14. SECURED OBLIGATIONS   Advertiser and/or Client's payment of obligations under this contract shall be guaranteed by all general corporate assets of Advertiser and/or Client, and not subordinated to any other obligations.  In the case that a Personal Guaranty is required by W4 in addition to such general corporate asset security, both forms of security shall be enforceable and separate and concurrent collection actions may be undertaken to collect obligations hereunder.  Further, if Advertiser creates or becomes an owner, partner or executive of a subsequent similar entity (an LLC, dba, sole proprietorship, partnership or any other form of business entity) in order to conduct internet media buying or selling, campaign brokering, distribution of online ad campaigns or any other business conducted under this contract, that entity will assume full liability for all accounts owing under this contract, jointly and severally, with Advertiser and Client, as applicable.

15. MISCELLANEOUS   This insertion order shall be governed by, interpreted and construed in accordance with the laws of the State of California.  The parties are independent contractors and no agency, partnership, joint venture or employer employee relationship is intended or created hereby.  This insertion order sets forth the entire understanding and agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter and may be changed only by a subsequent writing signed by both parties.  Unless otherwise stated, this insertion order is non-exclusive to either party and either party shall have the right to enter into similar agreements with other third parties.  The parties hereby represent and warrant that they shall at all times fully comply with all applicable state and federal statutes, rules and regulations with respect to their respective businesses including, without limitation laws governing deceptive trade practices.

| Advertiser Signature: | Aread | W4 Signature: | |
|---|---|---|---|
| Print: | AMY READ | Print: | Jared Klein |
| Title: | ACCOUNT MANAGER | Title: | Director of Sales |
| Date: | 26/09/2013 | Date: | 9/26/13 |

# EXHIBIT "B"

**EXHIBIT "B"**

W4 LLC
Credit Application

Date: 16/09/13

Acct Rep: _____

| First Page | Next Page | Previous Page | Last Page |

Legal Business Name: PIXEL BY PIXEL LIMITED

DBA / Trade Name: _____

[X] Corporation  [ ] Partnership  [ ] Proprietorship  [ ] LLC   Date & State of incorporation: _____

Federal Tax # (US): _____  GST# (Canada): _____  VAT# (International): ████████

Finance Contact: CHRIS PAINTER   Title: FINANCIAL DIRECTOR

Phone Number: ████████   FAX Number: _____   Email: ████████

Sales Contact: ALEX SCOVELL   Title: SALES DIRECTOR

Phone Number: _____   Email: ████████

Registered Address: 9 LIVERPOOL TERRACE   City: WORTHING

State / Province: W. SSX   Zip Code: BN11 1TA   Country: UK   Years in Business: 3

Mailing Address: 9 LIVERPOOL TERRACE   City: WORTHING

State / Province: W. SSX   Zip Code: BN11 1TA   Country: UK   No. of Employees: 10

Describe your primary business: DIGITAL MARKETING

Financial Statement Attached?  [ ] Yes  [X] No

Annual Gross Sales Overall: 1.4 MILLION   # of Employees: 10   Dun & Bradstreet #: ████████
  [ ] Yes  [ ] No

Bank Reference # 1: LLOYDS BANK   Phone: 02072260411

Contact Name & Title: MARK MCFADYEN   Fax: _____

Address: 19-20 UPPER STREET, ISLINGTON LONDON   e-mail Address: ████████

Account # & Type: ████ - BUSINESS ACCOUNT   Account # & Type: _____

Bank Reference # 2: _____   Phone: _____

Contact Name & Title: _____   Fax: _____

Address: _____   e-mail Address: _____

Account # & Type: _____   Account # & Type: _____

W4 LLC
Credit Application

| First Page | Next Page | Previous Page | Last Page |

☐ Yes      ☐ No
☐ Yes      ☐ No

| | |
|---|---|
| Principle Name & Title | ALEX SCOVELL | e-mail Address | ▓▓▓▓▓▓ |
| Home Address | 7 TYNE CLOSE | Phone Number | ▓▓▓▓▓▓ |
| City | WORTHING | State | | Zip Code | BN13 3NQ | SSN | |
| Country | UK | | ☒ Rent  ☐ Own |

| | |
|---|---|
| Principle Name & Title | CHRIS PAINTER | e-mail Address | ▓▓▓▓▓▓ |
| Home Address | 36 CRESCENT ROAD | Phone Number | ▓▓▓▓▓▓ |
| City | WORTHING | State | | Zip Code | BN11 1RL | SSN | |
| Country | UK | | ☐ Rent  ☒ Own |

| | |
|---|---|
| Principle Name & Title | | e-mail Address | |
| Home Address | | Phone Number | |
| City | | State | | Zip Code | | SSN | |

| | |
|---|---|
| Trade Reference 1. | GLOBAL WIDE MEDIA | Contact Name | SARA MENASHE |
| Phone | ▓▓▓▓ | Fax | | e-mail Address | ▓▓▓▓▓▓ |
| Address | 2400 BROADWAY ST- STE 550, SANTA MONICA, CA 90404 |

| | |
|---|---|
| Trade Reference 2. | ACXIOM | Contact Name | SIMON HARRIS |
| Phone | ▓▓▓▓ | Fax | | e-mail Address | ▓▓▓▓▓▓ |
| Address | 17 HATFIELDS, LONDON, SE1 8DJ |

| | |
|---|---|
| Trade Reference 3. | BIOSYNERGY | Contact Name | DANIEL HERMAN |
| Phone | ▓▓▓▓ | Fax | | e-mail Address | ▓▓▓▓▓▓ |
| Address | 120 WEST HEATH ROAD, LONDON, NW3 7TX |

W4 LLC
Credit Application

| First Page | Next Page | Previous Page | Last Page |

AGREEMENT & AUTHORIZATION

I hereby certify that the information contained herein is complete and accurate. This information has been furnished with the understanding that it is to be used to determine the amount and conditions of the credit to be extended. Furthermore, I hereby authorize the financial institutions listed in this credit application to release necessary information to the company for which credit is being applied for in order to verify the information contained herein.

Name of Authorized Representative
(this should be a bank signatory)
ALEX SCOVELL

Title   DIRECTOR

Date   16/09/13

# W4 LLC
## Credit Application

| First Page | Next Page | Previous Page | Last Page |
|---|---|---|---|

Completing this page is optional, should you not have enough existing credit history you may wish to complete this page. If you do choose to complete this page, please be sure to complete the all fields indicated to be considered valid.

This Personal Guarantee is entered into by and between W4 LLC, a Delaware Limited Liability Company, (hereinafter "Obligee"), and the undersigned (hereinafter "Guarantor"), and is to be effective upon complete execution of the signature blocks provided below (hereinafter the "Effective Date"). The undersigned, jointly and severally, does hereby guarantee and agree to pay any and all indebtedness of any nature whatsoever incurred by

Company/Entity Name **PIXEL BY PIXEL LIMITED**

(hereinafter referred to as "Company") to Obligee. It is understood that this Guarantee shall be a continuing, unconditional, and irrevocable guarantee to repay and indemnify such indebtedness of Company. Guarantor hereby agrees, that all rights, remedies and recourses afforded to Obligee by reason of this Guarantee or otherwise are separate and cumulative and may be pursued separately, successively, or concurrently, as occasion therefore shall arise, and are none-clusive and shall in no way limit or prejudice any other legal or equitable right, remedy, or recourse which Obligee may have. Guarantor hereby waives notice of default, nonpayment, and notice thereof and consents to any modification or renewal of the credit agreement hereby guaranteed. This Guarantee may be assigned by Obligee to any person or entity taking assignment of the underlying debt, without notice to Guarantor, and shall be fully enforceable by said assignee. Guarantor further agrees to pay all costs, interest, and reasonable attorney's fees incurred by Obligee in collecting any amounts hereby guaranteed, whether from Company or Guarantor. In the event that any provision in the Guarantee shall be construed by a court of competent jurisdiction to be unlawful or unenforceable and if the offending provision can be reformed to effect the clear intention of the parties herein, then, the offending provision shall be so reformed, and the remainder of the Guarantee shall remain in full force and effect as written. If the provision cannot be reformed to affect the clear intention of the parties hereto, then, this Guarantee shall be deemed to be reformed to exist as now written but without the offending provision.

For the purpose of credit extension with a Personal Guarantee, I hereby authorize and give permission for W4 LLC to obtain a copy of my credit report. The name of the consumer reporting agency is DataCheck, Inc. 63 Via Pico Plaza, #247, San Clemente, CA, 92672, PH: 800-253-3394. Their website address is ... You may find DataCheck's privacy practices, including whether your personal information will be sent outside of the United States or its territories, and information that complies with California Civil Code subsection 1786.20, on their website under Privacy Policies. (Please note DataCheck does not send any credit information obtained on you overseas.) You are being given a copy of the "Summary of Your Rights Under the Fair Credit Reporting Act" prepared pursuant to 15 U.S.C. section 181 (g & c). You have the right to request additional disclosures of the nature and scope of the investigation and a statement of your rights. If requested, I can obtain a copy of this credit report by checking this box ☒ Check Box

I hereby agree to bind myself to pay you promptly on demand, without offset, credit or deduction of any kind, any sum which may become due to you by Company, a bankruptcy trustee, a creditor of the Company or any other person as a return of a preferential payment made to you by the Company pursuant to bankruptcy or insolvency laws.

Executed At **11 00** , this **16** day of **SEPT** , 20 **13**

Name: **ALEX P SCOVELL**

SSN or NIN #

Date of Birth ▮▮▮▮▮

Home Address **7 TYNE CLOSE**

City **WORTHING** State **UK** Zip Code **BN13 3NG**

Name:

SSN or NIN #

Date of Birth

Home Address

City ___ State ___ Zip Code ___

| Print Form |
|---|

# EXHIBIT "C"

**EXHIBIT "C"**



W4 LLC
(Payment Remittance Address)
Dept LA 23609
Pasadena, CA 91185-3609

**Invoice**

Phone  888-838-1572

| | |
|---|---|
| Date | 12/31/2013 |
| Invoice # | 15538 |

**Bill To**

Pixel By Pixel Limited
Attn:  Accounts Payable
9 Liverpool Terrace
Worthing, W-SSX BN11 ITA, W-SSX
UK

| P.O./IO No. | Terms | Rep |
|---|---|---|
| | Net 15 | MRS |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| Quote Me Quick - UK Private Medical Insurance (#8090) | 53 | 30.00 | 1,590.00 |
| BBR Financial - UK Car Loan (#8088) | 4 | 25.00 | 100.00 |
| Quote Me Quick - UK Life Insurance (#8089) | 2 | 33.00 | 66.00 |
| December 2013 Campaign Statistics | | | |

Wire/ACH Payment Method Preferred:
**Silicon Valley Bank**
**3003 Tasman Dr.**
**Santa Clara, CA 95054**
**Account # 3300686740**
**Wire/ACH Routing # 121140399**
**SWIFT Code: SVBKUS6S**

| | |
|---|---|
| Total | GBP 1,756.00 |
| Pymnts/Credits | GBP 0.00 |
| Balance Due | GBP 1,756.00 |

| Fax # | E-mail | Web Site |
|---|---|---|
| | finance@w4.com | www.w4.com |



W4 LLC
(Payment Remittance Address)
Dept LA 23609
Pasadena, CA 91185-3609

**Invoice**

Phone   888-838-1572

| | Date | 1/31/2014 |
|---|---|---|
| | Invoice # | 16010 |

**Bill To**

Pixel By Pixel Limited
Attn:  Accounts Payable
9 Liverpool Terrace
Worthing, W-SSX BN11 ITA, W-SSX
UK

| P.O./IO No. | Terms | Rep |
|---|---|---|
| | Net 15 | MRS |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| Quote Me Quick - UK Private Medical Insurance(#8090) | 4 | 30.00 | 120.00 |
| Quote Me Quick - UK Life Insurance(#8089) | 1 | 33.00 | 33.00 |
| January 2014 Campaign Statistics | | | |

**Wire/ACH Payment Method Preferred:**
**Silicon Valley Bank**
**3003 Tasman Dr.**
**Santa Clara, CA 95054**
**Account # 3300686740**
**Wire/ACH Routing # 121140399**
**SWIFT Code: SVBKUS6S**

| Total | GBP 153.00 |
|---|---|
| Pymnts/Credits | GBP 0.00 |
| Balance Due | GBP 153.00 |

| Fax # | E-mail | Web Site |
|---|---|---|
| | finance@w4.com | www.w4.com |

W4 LLC

(Payment Remittance Address)
Dept LA 23609
Pasadena, CA 91185-3609

# Finance Charge

| Date | Invoice # |
|------|-----------|
| 2/12/2014 | FC 394 |

| Bill To |
|---------|
| Pixel By Pixel Limited<br>Attn:  Accounts Payable<br>9 Liverpool Terrace<br>Worthing, W-SSX BN11 1TA<br>UK |

| Terms |
|-------|
| Due on receipt |

| Description | Amount |
|-------------|--------|
| Finance Charges on Overdue Balance<br>Invoice #15538 for 1,756.00 on 12/31/2013 | 24.25 |

| | |
|---|---|
| **Total** | GBP 24.25 |
| **Payments/Credits** | GBP 0.00 |
| **Balance Due** | GBP 24.25 |

# EXHIBIT "D"

**EXHIBIT "D"**

| From: | |
| To: | |
| Cc: | |
| Subject: | RE: December payment |
| Date: | Wednesday, March 05, 2014 7:45:26 AM |
| Attachments: | |

Hi Grant

Apologies for the delay in reply

We've been waiting for a large payment to come through, it should be with us at the end of the month at the very latest.

As soon as the payment has come in we can pay you. I'm really sorry about this and we don't usually work like this – which I guess is why we had the internal finance meeting.

If you have any questions please email _____ who should be able to help

Again, I'm really sorry for this inconvenience

Kind regards,

Amy

Pixel **by** Pixel

Amy Read _____
_____
_____
_____
_____

_____

**From:** grant buckingham [mailto:grant@w4.com]
**Sent:** 04 March 2014 01:01
**To:** grant buckingham; Amy Read
**Cc:** miles sullivan; finance
**Subject:** RE: December payment

_____

**From:** grant buckingham [mailto:_____]
**Sent:** Friday, February 28, 2014 8:54 AM
**To:** grant buckingham; 'Amy Read'
**Cc:** miles sullivan; finance
**Subject:** RE: December payment

_____

**Grant Buckingham**
Account Manager
888 838 1572   133
310 420 3447   mob
888 812 9005   fax
_____  aim
w4  _____

**Inc.**
**50**

**From:** grant buckingham [_____]
**Sent:** Thursday, February 27, 2014 6:07 PM
**To:** 'Amy Read'
**Cc:** miles sullivan; finance
**Subject:** RE: December payment

_____

**From:** Amy Read [_____]
**Sent:** Thursday, February 27, 2014 1:46 AM
**To:** grant buckingham
**Cc:** miles sullivan; finance
**Subject:** RE: December payment

Hi Grant

Apologies for this

I'm going to be part of the finance meeting on Friday with my Directors so I'll bring this up then and push for payment to be made asap

I'm really sorry no one has got back to you – I'll keep you updated and let you know when payment will be made following the meeting

Kind regards,

Amy

**Pixel by Pixel**
Amy Read - Account Manager
Pixel by Pixel Limited
t: 11 745 59 7432
A profile amy read.co.uk
PLEASE review complaints here

From: grant buckingham [mailto: grant@w4.com]
Sent: 26 February 2014 17:28
To: Amy Read
Cc: miles sullivan; finance
Subject: December payment
Importance: High

Hey Amy,
   Was wondering if you've heard any updates on your side regarding the past due December payment.  I've been emailing and sending follow ups since Friday to the three email addresses you provided, and haven't heard anything back from any three.
   Obviously, we do not want to have to escalate this matter to our Director's over here, but we are running out of options.

Thanks Amy,

| Rep | Type | Entered/Last Modified | Date | ID | Advertiser | Inv# | Inv Period | Terms | Due Date | Aging | Open Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MRS | Invoice | 01/03/2014 11:43:57 | 12/31/2013 | 1609 | Pixel By Pixel Limited | 15638 | December 2013 Campaign Statistics | Net 15 | 01/15/2014 | 36 | 2,358.58 |

Grant Buckingham
Account Manager
888 838 1572   133
310 420 3447   mob
888 812 9005   fax
grant@w4.com   am
**w4** .com (w4.com)



EXHIBIT "E"



## TIEDT
## HURD
Attorneys at Law

980 Montecito Drive, Suite 209
Corona, CA  92879
Tel: (951) 549-9400 ♦ Fax: (951) 549-9800

April 22, 2014

<u>**SENT VIA EMAIL AND REGULAR U.S. MAIL**</u>

**Pixel by Pixel Limited**
9 Liverpool Terrace
Worthington, W-SSX
  BN11 ITA
United Kingdom

Attn:   Amy Read
         Account Manager
Email:  amy@pixelbypixel.co.uk

**Pixel by Pixel Limited**
9 Liverpool Terrace
Worthington, W-SSX
  BN11 ITA
United Kingdom

Attn:   Chris Painter
         Financial Director
Email:  chris@pixelbypixel.co.uk

**Pixel by Pixel Limited**
9 Liverpool Terrace
Worthington, W-SSX
  BN11 ITA
United Kingdom

Attn:   Alex Scovell
         Sales Director
Email:  alex@pixelbypixel.co.uk

Re:              <u>**W4, LLC v. Pixel By Pixel Limited**</u>
Invoice #s:      15538, 16010 & FC394
Past due Amt. Owed:  **$3,182.96  (£1,933.25)**

Dear Ms. Read and Messrs. Painter and Scovell:

Please be advised that our firm serves as counsel for W4, LLC ("W4"), and we have been retained in this instance to address an outstanding balances owed to W4 by Pixel By Pixel Limited (hereafter referred to as "Pixel"), for services rendered by W4 in December 2013 and January 2014.  At issue are invoice numbers 15538 & 16010 for those services.

To properly address the nature of the issues in this matter, we begin with some background.  The subject "dispute" relates to services provided by W4 pursuant to a an agreement between the parties as more fully set forth in a standard Advertising Insertion Order ("IO"), and the "Terms and Conditions" set forth therein, for ad campaigns entitled as follows: (1) "BBR Financial-UK Car Loan-Email only;" (2) "Quote Me Quick-UK Life Insurance-Email Only;" and (3) Quote Me Quick-UK Private Medical Insurance-Email Only."  (For your reference, a copy of the IO is also attached/enclosed with as Exhibit "A" to this letter.)  That IO provided that W4 would provide its advertising

**Pixel By Pixel Limited**
April 22, 2014
Page 2

services on a "CPA" (cost per action) basis at various CPA rates, ranging from £25 per action to £33 per action.

In addition, when Pixel sought to retain the services of W4, in order for W4 to establish an "open account" for Pixel, Pixel applied for a "line of credit" with W4, and submitted a "Credit Application" to permit W4 to extend a line of credit to Pixel.  (A copy of the Credit Application is also enclosed/attached as Exhibit "B" for your reference.

Further, under the terms of the Agreement, payment on all submitted invoices were due to W4 from Pixel on a "net 5" basis, meaning within 5 days of the end of the billing month following submission of the invoice.

Pursuant to the Agreement between W4 and Pixel (the IO), W4 agreed to provide internet marketing services to, or for the benefit of, Pixel, and did, in fact, generate compensable activity for Pixel.  In fact, Pixel was invoiced for activity in October 2013 and November 2013 (per Invoices numbers 14640 and 15091), and that Pixel paid for these services via wire transfer.

However, since the last wire transfer credited to Pixel's open account on January 17, 2014, Pixel has failed to pay for W4's services.  More specifically, pursuant to Invoice # 15538, dated December 31, 2013, Pixel became indebted to W4 in the sum of £1,756.00, and per Invoice # 16010, dated January 31, 2014, Pixel became indebted to W4 in the sum of £153.00.

Under the terms of the Agreement (the IO), Pixel agreed that all payments not made on the amounts invoiced shall accrue interest at the rate of 1.5% per month, or the highest rate allowable by law.  Accordingly, when Invoice number # 16325 went unpaid, W4 issued Invoice # FC-394, reflecting the finance charges of £24.25, or $38.76 (U.S.) imposed for Pixel's failure to timely pay the amounts owed.

(For your reference, copies of the subject invoices referenced above are enclosed/attached collectively as Exhibit "C".)

All totaled, between Invoice numbers 15538 and 16010, and the finance charges reflected in FC394, the total amount owed by Pixel to W4 is now £1,933.25 or, by our calculations $3,182.96 U.S. Dollars, and this amount is now overdue.

There should be little dispute that the amounts owed referenced above are, indeed, due and owing.  Based on recent email communication between W4 and Pixel, wherein Pixel's balance owed to W4 was addressed, Pixel never disputed the amount owed.  Rather, Ms. Read of Pixel acknowledged the debt, promised to "push for payment ASAP," and apparently accounted for the delay in payment citing "finance" issues.  Thus, we do not believe that Pixel will have any credible defense for its non-payment of the debt. (A copy of the "email chain" is enclosed/attached as Exhibit "D.")

**Pixel By Pixel Limited**
April 22, 2014
Page 3

      The contract between W4 and Pixel (the IO) provides that Pixel agreed to pay all costs incurred by W4 including, but not limited to, collection agency and attorneys' fees and costs, as a result of having to enforce the terms of the insertion order.  Thus, if the amounts owed are not paid, and W4 is forced to institute legal proceedings to collect this debt, Pixel would also be liable for all reasonable costs, interest and attorneys' fees in addition to the principal owed.  [IO, Section 1. Payment]

      The contract between W4 and Pixel (the IO) also provides that the Agreement "shall be governed, construed, and enforced in accordance with the laws of the State of California" and that "if any legal action is required to enforce this contract, such will be filed with a court in or near Los Angeles, California."  Thus, if legal action is required, by contract, Pixel has already agreed to the jurisdiction of the courts in California, and will be required to defend itself in a California court.  In this case, based on diversity of citizenship, such an action would be filed in a U.S. federal court, likely the United States District Court in Los Angeles.

      All that being said, at this point we are looking to reach an amicable resolution of this matter.  We have been retained to, if necessary, file a breach of contract/collection action against Pixel to seek recovery of the **$3,182.96** owed for services rendered by W4 and properly invoiced.  If forced to file a lawsuit, we will pursue an action based on breach of contract and "common counts," seeking not only the outstanding balance, but also the recovery of all costs, including attorneys' fees incurred in enforcing the contract, and allowable interest due under the contract.  However, before filing such an action, we are sending this letter to provide your company with a final opportunity to make prompt payment of the outstanding debt.

      To avoid any further action on our part, or that of W4, please remit payment by no later than April 30, 2014.

      Should you have any questions with regard to the foregoing, please do not hesitate to contact the undersigned.

Very truly yours

**TIEDT & HURD**

Marc S. Hurd

MSH/mh

Enclosures- as stated

EXHIBIT "F"

## Jill Husk

| | |
|---|---|
| **From:** | Alex Scovell <alex@pixelbypixel.co.uk> |
| **Sent:** | Tuesday, May 06, 2014 6:39 AM |
| **To:** | Jill Husk |
| **Subject:** | Re: W4 v. Pixel |

Hi Jill,

I regret to inform you that Pixel by Pixel Ltd has gone into Administration.  Unfortunately we suffered a sizeable bad debt from one of our clients which proved irrecoverable.

As such, I am no longer in control of the company which is the hands of administrators:

Katie Kellaway

**BM Advisory**.

**(incorporating Atherton Bailey, Crawley & Worthing)**

Arundel House
1 Amberley Court
Whitworth Road
County Oak

Crawley

RH11 7XL


Direct Line: +44 (0)1293 453646

Fax Line: +44 (0)1293 428530


www.bm-advisory.com




Kind regards,



Alex

Alex Scovell

Pixel **by** Pixel

T:  020 3397 3798

M: 07504243759

E: alex@pixelbypixel.co.uk

W: www.pixelbypixel.co.uk

Skype: alexscovellwork

This email is confidential. If you are not the person to whom it is addressed, you may not print, copy or distribute it. If you have received this email in error, please notify us immediately by email to alex@pixelbypixel.co.uk and delete the email from your system. Thank you.

**From:** Jill Husk <jhusk@tiedtlaw.com>
**Date:** Wednesday, 23 April 2014 18:10
**To:** Chris Painter <chris@pixelbypixel.co.uk>, Alex Scovell <alex@pixelbypixel.co.uk>, Amy Read <amy@pixelbypixel.co.uk>
**Subject:** W4 v. Pixel

Gentlepersons:

Please see attached correspondence.
**Please respond to Mr. Marc S. Hurd via email at** mhurd@tiedtlaw.com **or via regular mail at the address below.**

Jill Husk

Secretary to Marc S. Hurd/John E. Tiedt

TIEDT & HURD
980 Montecito Drive, Suite 209

EXHIBIT "G"



**TIEDT HURD**
Attorneys at Law

980 Montecito Drive, Suite 209
Corona, CA  92879
Tel: (951) 549-9400 ♦ Fax: (951) 549-9800

May 8, 2014

**VIA EMAIL AND FEDERAL EXPRESS**

Alex Scovell
  (Email: alex@pixelbypixel.co.uk)
7 Tyne Close
Worthing
BN13 3NG
**United Kingdom**

| | |
|---|---|
| Re: | **W4, LLC v. Pixel By Pixel Limited** |
| Invoice #s: | 15538, 16010 & FC394 |
| Past due Amt. Owed: | **$3,182.96  (£1,933.25)** |

Dear Mr. Scovell:

As you should already be aware, based on the fact that you were an addressee on our April 22, 2014 letter to Pixel By Pixel, our firm serves as counsel for W4, LLC ("W4"), and we have been retained in this instance to address an outstanding balances owed to W4 by Pixel By Pixel Limited (hereafter referred to as "Pixel"), for services rendered by W4 in December 2013 and January 2014. At issue are invoice numbers 15538 & 16010 for those services. (For your reference, a copy of the April 22, 2014 letter, with all its attachment, is attached/enclosed herewith.)

As was more fully described in that April 22, 2014 letter, we are seeking to recover balances owed by Pixel to W4 pursuant to an agreement between the parties as more fully set forth in a standard Advertising Insertion Order ("IO"), and the "Terms and Conditions" set forth therein, for ad campaigns entitled as follows: (1) "BBR Financial-UK Car Loan-Email only;" (2) "Quote Me Quick-UK Life Insurance-Email Only;" and (3) Quote Me Quick-UK Private Medical Insurance-Email Only." (See Exhibit "A" to the April 22, 2014 letter.) That IO provided that W4 would provide its advertising services on a "CPA" (cost per action) basis at various CPA rates, ranging from £25 per action to £33 per action.

In addition, when Pixel sought to retain the services of W4 in September 2013, in order for W4 to establish an "open account" for Pixel, Pixel applied for a "line of credit" with W4, and submitted a "Credit Application" to permit W4 to extend a line of credit to Pixel. (See Exhibit "B" to the April 22, 2014 letter.)

More important to the topic of discussion in this letter, this Credit Application also included a "Personal Guarantee" that was completed/executed by you and returned to W4, reflecting that you agreed to <u>personally guarantee Pixel's debts</u>. (See page 4 of Exhibit "B" to the April 22, 2014 letter.)

Pursuant to the Agreement between W4 and Pixel (the IO), W4 agreed to provide internet marketing services to, or for the benefit of, Pixel, and did, in fact, generate

Pixel By Pixel Limited
May 8, 2014
Page 2

compensable activity for Pixel.  In fact, Pixel was invoiced for activity in October 2013 and November 2013 (per Invoices numbers 14640 and 15091), and Pixel paid for these services via wire transfer.

However, since the last wire transfer credited to Pixel's open account on January 17, 2014, Pixel has failed to pay for W4's services.  More specifically, pursuant to Invoice # 15538, dated December 31, 2013, Pixel became indebted to W4 in the sum of £1,756.00, and per Invoice # 16010, dated January 31, 2014, Pixel became indebted to W4 in the sum of £153.00.

Under the terms of the Agreement (the IO), Pixel agreed that all payments not made on the amounts invoiced shall accrue interest at the rate of 1.5% per month, or the highest rate allowable by law.  Accordingly, when Invoice number # 16325 went unpaid, W4 issued Invoice # FC-394, reflecting the finance charges of £24.25, or $38.76 (U.S.) imposed for Pixel's failure to timely pay the amounts owed. (For reference, see copies of the subject invoices referenced above enclosed/attached collectively as Exhibit "C" to the April 22, 2014 letter.)

All totaled, between Invoice numbers 15538 and 16010, and the finance charges reflected in FC-394, the total amount owed by Pixel to W4 is now £1,933.25 or, by our calculations $3,182.96 U.S. Dollars, and this amount is now overdue.

There should be little dispute that the amounts owed referenced above are, indeed, due and owing.  Based on recent email communication between W4 and Pixel, wherein Pixel's balance owed to W4 was addressed, Pixel never disputed the amount owed.   Rather, Ms. Read of Pixel acknowledged the debt, promised to "push for payment ASAP," and apparently accounted for the delay in payment citing "finance" issues.  Thus, we do not believe that Pixel has any credible defense for its non-payment of the debt. (A copy of the "email chain" is enclosed/attached as Exhibit "D" to the April 22, 2014 letter.)

The contract between W4 and Pixel (the IO) provides that Pixel agreed to pay all costs incurred by W4 including, but not limited to, collection agency and attorneys' fees and costs, as a result of having to enforce the terms of the insertion order.  Thus, if the amounts owed are not paid, and W4 is forced to institute legal proceedings to collect this debt, Pixel would also be liable for all reasonable costs, interest and attorneys' fees in addition to the principal owed.  [IO, Section 1. Payment]

We should also note, as referenced above, that in September 2013 when Pixel initially applied for credit with W4, you returned the Personal Guarantee in conjunction with a credit application submitted by Pixel.  Under the terms of that Personal Guarantee ("PG"), you agreed "to pay any and all indebtedness of any nature whatsoever incurred by" Pixel.  This PG further provided that the PG was and is "continuing, unconditional and irrevocable."  Thus, should Pixel be found to be in default on its payments, or be otherwise unable to pay its obligations under the contract with W4, you are personally liable for that outstanding debt.

Pixel By Pixel Limited
May 8, 2014
Page 3

In an apparent response to our April 22, 2014 demand letter, on May 6, 2014, you personally forwarded an email advising as follows:

> "I regret to inform you that that Pixel by Pixel Ltd has gone into Administration.  Unfortunately we suffered a sizeable bad debt from one of our clients which proved irrecoverable. As such, I am no longer in control of the company which is the hands of administrators."

We thereafter were provided with a copy of an email from Katie Kellaway of BM Advisory, advising that Pixel "entered Administration in the High Court on 24 April 2014 and Malcolm Fillmore and Andrew Pear were appointed Joint Administrators."  The email further provided that Ms. Kellaway understood "that there is a debt owed by Pixel by Pixel to [W4]" and attached a proof of debt form for completion and return to me together with supporting documentation.  For your reference, a copy of this May 6, 2014 email from Ms. Kellaway is enclosed herewith.

At this point, given Pixel's seeking of refuge from its debts through the UK "Administration" process, W4 has no other option but to seek recovery of the debt owed by Pixel from you personally, under the terms of the Personal Guarantee referenced above.  Thus, demand is hereby made that you pay the amount owed by Pixel to W4 in the sum of $3,182.96.

We remain committed to reaching an amicable resolution of this matter.  However, we have been retained to, if necessary, file a breach of contract/collection action against you personally to recovery the total amount of $3,182.96 owed by Pixel for services rendered by W4 and properly invoiced.  If forced to file a lawsuit, we will pursue an action based on breach of contract, breach of personal guarantee and "common counts," seeking not only the outstanding balance, but also the recovery of all costs, including attorneys' fees incurred in enforcing the contract, and allowable interest due under the contract.  However, before filing such an action, we are sending this letter to provide you with a final opportunity to make prompt payment of the outstanding debt.

To avoid any further action on our part, or that of W4, please remit payment by no later than May 19, 2014.

Should you have any questions with regard to the foregoing, please do not hesitate to contact the undersigned.

Very truly yours

**TIEDT & HURD**

Marc S. Hurd

MSH/mh
Enclosures- as stated

EXHIBIT "H"

**Marc S. Hurd**

| | |
|---|---|
| **From:** | Alex Scovell <alex@pixelbypixel.co.uk> |
| **Sent:** | Tuesday, May 20, 2014 1:18 AM |
| **To:** | Marc S. Hurd |
| **Subject:** | Re: W4 v. Pixel |

HI Marc

Have you spoken to the administrators to find out how much you will be paid.  I would suggest this should be your first port of call – your debt is with Pixel by Pixel Ltd and until they fail to pay I won't be considering any personal guarantees.

Let me know how you get on.

Alex

**From:** "Marc S. Hurd" <mhurd@tiedtlaw.com>
**Date:** Monday, 19 May 2014 22:31
**To:** Alex Scovell <alex@pixelbypixel.co.uk>
**Subject:** RE: W4 v. Pixel

We have been able to confirm a recent delivery to you, via Federal Express, of a letter dated May 8, 2014, regarding our client's claims against you and Pixel by Pixel.  We can acknowledge your recent email regarding the recent placement of Pixel by Pixel into "administration," and your claim that you are "no longer in control of the company which is the hands of administrators."  However, W4 is looking to you, as the party who executed a personal guaranty, for satisfaction of the debt owed to W4 by Pixel.  Regardless of your control over the company that is subject to "administration,: you remain personally liable for the company's debts.  Please advise as to your intentions to honor this debt obligation.

Marc S. Hurd
TIEDT & HURD
980 Montecito Drive, Suite 209
Corona, CA 92879
Tel: (951) 549-9400
Fax:  (951) 549-9800
mhurd@tiedtlaw.com

1

♻Please consider the environment before printing this email.

The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof. In addition, this e-mail transmission may be confidential and it may be subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail, we also request that you immediately delete this message and its attachments, if any.   UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (1806 U.S.C. 2701(a) & 2702(a)).

LEGAL NOTICE- If you send e-mail to Tiedt & Hurd in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential. If you communicate with us by e-mail in connection with a matter for which Tiedt & Hurd already represents you, please remember that Internet e-mail is not secure and you may wish to consider other means of sharing the information.

**From:** Alex Scovell [mailto:alex@pixelbypixel.co.uk]
**Sent:** Friday, May 09, 2014 8:01 AM
**To:** Jill Husk; Marc S. Hurd
**Subject:** Re: W4 v. Pixel

hello,

I regret to inform you that Pixel by Pixel Ltd has gone into Administration.  Unfortunately we suffered a sizeable bad debt from one of our clients which proved irrecoverable.

As such, I am no longer in control of the company which is the hands of administrators:

Katie Kellaway

**BM Advisory.**

(incorporating Atherton Bailey, Crawley & Worthing)

Arundel House
1 Amberley Court
Whitworth Road
County Oak

Crawley

RH11 7XL


Direct Line: +44 (0)1293 453646

Fax Line: +44 (0)1293 428530


www.bm-advisory.com




Kind regards,


Alex

**From:** Jill Husk <jhusk@tiedtlaw.com>
**Date:** Friday, 9 May 2014 01:45
**To:** Alex Scovell <alex@pixelbypixel.co.uk>
**Subject:** W4 v. Pixel

Mr. Scovell:

Please see attached correspondence.
**Please respond to Mr. Marc S. Hurd via email at** mhurd@tiedtlaw.com **or via regular mail at the address below.**


Jill Husk

Secretary to Marc S. Hurd/John E. Tiedt

# Tiedt & Hurd
980 Montecito Drive, Suite 209
Corona, CA 92879
Tel: (951) 549-9400

Fax: (951) 549-9800
mhurd@tiedtlaw.com


The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof. In addition, this e-mail transmission may be confidential and it may be subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments, if any. UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (1806 U.S.C. 2701(a) & 2702(a)).

EXHIBIT "I"

**Marc S. Hurd**

| | |
|---|---|
| **From:** | Alex Scovell <alex@pixelbypixel.co.uk> |
| **Sent:** | Tuesday, May 20, 2014 8:53 AM |
| **To:** | Marc S. Hurd |
| **Subject:** | Re: W4 v. Pixel |

Hi Marc,

I will come back to you on this shortly.

Kind regards,

Alex

**From:** "Marc S. Hurd" <mhurd@tiedtlaw.com>
**Date:** Tuesday, 20 May 2014 16:28
**To:** Alex Scovell <alex@pixelbypixel.co.uk>
**Subject:** RE: W4 v. Pixel

Mr. Scovell;

Thank you for your response to our follow up email about the debt. I appreciate your suggestion for the alternative "port of call," to pursue Pixel by Pixel through the administration process. As I understand it, administration is but one of a number of British insolvency procedures, and that it may preclude legal action against the company pending the outcome of that procedure.

However, I don't believe that your position that W4 is obligated to "wait and see" if Pixel fails to pay has merit. Our position is that W4 cannot be forced to wait on the results of the "administration" process with Pixel. For your reference, a copy of the credit application, with the attendant personal guarantee ("PG") is attached. Please note that this PG provides that the obligor agreed to be "jointly and severally" liable, and that the obligation is "separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefore shall arise." Thus, regardless of Pixel's ability or inability to pay its debts, W4 has legal right to seek recovery from you directly for Pixel's debts. If you then feel that Pixel owes you for Pixel's obligations, then you have recourse against Pixel within the confines and limitations of the "administration" process to seek recovery from Pixel and/or the assigned administrator.

Thus, we remind you that W4 can, at its sole option, still seek recovery from you personally, and is hereby availing itself of that option. We await your further response and sincerely hope that, with an amount at issue of

1

$3,182.96  (£1,933.25), you will see fit to pay that obligation forthwith without need for further legal fees and costs, fees and costs which are likely recoverable against you if legal action is required.

I thank you for your attention to this matter.

Marc S. Hurd
**Tiedt & Hurd**
980 Montecito Drive, Suite 209
Corona, CA 92879
Tel: (951) 549-9400
Fax:  (951) 549-9800
mhurd@tiedtlaw.com

⚖ Please consider the environment before printing this email.

The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof. In addition, this e-mail transmission may be confidential and it may be subject to privilege protecting communications between attorneys or solicitors and their clients.  If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality.  If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments, if any.   UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (1806 U.S.C. 2701(a) & 2702(a)).
LEGAL NOTICE- If you send e-mail to Tiedt & Hurd in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential. If you communicate with us by e-mail in connection with a matter for which Tiedt & Hurd already represents you, please remember that Internet e-mail is not secure and you may wish to consider other means of sharing the information.

**From:** Alex Scovell [mailto:alex@pixelbypixel.co.uk]
**Sent:** Tuesday, May 20, 2014 1:18 AM
**To:** Marc S. Hurd
**Subject:** Re: W4 v. Pixel

HI Marc


Have you spoken to the administrators to find out how much you will be paid.  I would suggest this should be your first port of call – your debt is with Pixel by Pixel Ltd and until they fail to pay I won't be considering any personal guarantees.



Let me know how you get on.



Alex

**From:** "Marc S. Hurd" <mhurd@tiedtlaw.com>
**Date:** Monday, 19 May 2014 22:31
**To:** Alex Scovell <alex@pixelbypixel.co.uk>
**Subject:** RE: W4 v. Pixel

We have been able to confirm a recent delivery to you, via Federal Express, of a letter dated May 8, 2014, regarding our client's claims against you and Pixel by Pixel. We can acknowledge your recent email regarding the recent placement of Pixel by Pixel into "administration," and your claim that you are "no longer in control of the company which is the hands of administrators." However, W4 is looking to you, as the party who executed a personal guaranty, for satisfaction of the debt owed to W4 by Pixel. Regardless of your control over the company that is subject to "administration,: you remain personally liable for the company's debts. Please advise as to your intentions to honor this debt obligation.

Marc S. Hurd
TIEDT & HURD
980 Montecito Drive, Suite 209
Corona, CA 92879
Tel: (951) 549-9400
Fax: (951) 549-9800
mhurd@tiedtlaw.com

🖶Please consider the environment before printing this email.

The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof. In addition, this e-mail transmission may be confidential and it may be subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments, if any. UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (1806 U.S.C. 2701(a) & 2702(a)).

LEGAL NOTICE - If you send e-mail to Tiedt & Hurd in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential. If you communicate with us by e-mail in connection with a matter for which Tiedt & Hurd already represents you, please remember that Internet e-mail is not secure and you may wish to consider other means of sharing the information.

**From:** Alex Scovell [mailto:alex@pixelbypixel.co.uk]
**Sent:** Friday, May 09, 2014 8:01 AM
**To:** Jill Husk; Marc S. Hurd
**Subject:** Re: W4 v. Pixel

hello,

I regret to inform you that Pixel by Pixel Ltd has gone into Administration. Unfortunately we suffered a sizeable bad debt from one of our clients which proved irrecoverable.

As such, I am no longer in control of the company which is the hands of administrators:

Katie Kellaway

**BM Advisory.**

(incorporating Atherton Bailey, Crawley & Worthing)

Arundel House
1 Amberley Court
Whitworth Road
County Oak

Crawley

RH11 7XL

Direct Line: +44 (0)1293 453646

3

Fax Line: +44 (0)1293 428530

www.bm-advisory.com

Kind regards,

Alex

**From:** Jill Husk <jhusk@tiedtlaw.com>
**Date:** Friday, 9 May 2014 01:45
**To:** Alex Scovell <alex@pixelbypixel.co.uk>
**Subject:** W4 v. Pixel

Mr. Scovell:

Please see attached correspondence.
**Please respond to Mr. Marc S. Hurd via email at** mhurd@tiedtlaw.com **or via regular mail at the address below.**

Jill Husk

Secretary to Marc S. Hurd/John E. Tiedt

**TIEDT & HURD**
980 Montecito Drive, Suite 209
Corona, CA 92879
Tel: (951) 549-9400

Fax: (951) 549-9800
mhurd@tiedtlaw.com

The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof. In addition, this e-mail transmission may be confidential and it may be subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments, if any. UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (1806 U.S.C. 2701(a) & 2702(a)).

4

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| W4, LLC, a Delaware Limited Liability Company, registered to do business in California as W4 MEDIA, LLC | ) ) ) ) | |
| *Plaintiff(s)* | ) ) | |
| v. | ) ) | Civil Action No. 2:14-05407 -MMM(JEM(x) |
| ALEX SCOVELL, a Foreign National and Does 1 through 10, Inclusive, | ) ) ) | |
| *Defendant(s)* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Marc S. Hurd
Tiedt & Hurd
980 Montecito Drive, Suite 209
Corona, CA 92879

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 7/11/2014

ANDRES PEDRO

*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| W4, LLC, a Delaware Limited Liability Company, registered to do business in California as W4 MEDIA, LLC | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| ALEX SCOVELL, a Foreign National and Does 1 through 10, Inclusive, | ) CV14-05407-MMM(JEMx) ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Marc S. Hurd
Tiedt & Hurd
980 Montecito Drive, Suite 209
Corona, CA 92879

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 7/11/2014

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                                    .

❑ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| W4, LLC, a Delaware Limited Liability Company, registered to do business in California as W4 MEDIA, LLC | ALEX SCOVELL, a Foreign National |

| **(b) County of Residence of First Listed Plaintiff** _____ | **County of Residence of First Listed Defendant** _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** Yes ☒ No ☐ (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No   **MONEY DEMANDED IN COMPLAINT:** $ 3,182.96

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of personal guaranty brought under diversity [28 USC Section 1332(c)(2)]

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

**FOR OFFICE USE ONLY:**   Case Number: _____

| CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no, " skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | [ ] NO.  Continue to Question B.2. |
| If "no," skip to Question C.  If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | [ ] NO.  Continue to Question C.2. |
| If "no," skip to Question D.  If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E,  below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E,  below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes | [X] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?       ☒ NO       ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?       ☒ NO       ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   MARC S. HURD   *Marc S. Hurd*       DATE: 7/10/14

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge  **Margaret M. Morrow**  and to

Magistrate Judge  **John E. McDermott** .

The case number on all documents filed with the Court should read as follows:

## CV−14−5407−MMM−JEM

Pursuant to General Order 05−07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery−related motions. All discovery−related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U.S. District Court

 July 11, 2014 
Date

By  /s/ *Geneva Hunt* 
Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases removed from state court, on all parties served with the Notice of Removal) by the party who filed the Complaint (or Notice of Removal).*